NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                        :
AMBROSE HARRIS,                :
                                        :
            Plaintiff,              :
                                        :
            v.                  :      CIVIL ACTION NO. 08-1014 (JAP)
                                        :
MICHELLE RICCI, et al.,        :
                                        :      **OPINION**
            Defendants.        :
_____:

PISANO, District Judge.

      Presently before the Court is a request from *pro se* Plaintiff Ambrose Harris ("Plaintiff") for a preliminary injunction and temporary restraining order ("TRO") against Defendants Michelle Ricci, Mark Salaga, Donald Mee, and Lieutenant Lach (collectively, "Defendants").[1] Defendants oppose the motion. For the reasons set forth herein, the Court denies Plaintiff's request.

___

[1] Plaintiff did not file a formal motion seeking this relief. *See* Fed. R. Civ. P. 65 (governing injunctive relief). Nevertheless, the Court liberally construes Plaintiff's submissions and adjudicates the informal request as if Plaintiff had filed a formal motion. *See Hartmann v. Carroll*, 492 F.3d 478, 482 n.8 (3d Cir. 2007) (noting that "*pro se* filings are to be construed liberally"). Further, the Court finds that Plaintiff's submission provided Defendants with adequate notice that injunctive relief was sought; indeed, Defendants filed a formal opposition to the relief. *See* Fed. R. Civ. P. 65(a)(1) (permitting issuance of preliminary injunction "only on notice to the adverse party"); *Anderson v. Davila*, 125 F.3d 148, 156 (3d Cir. 1997) (discussing notice requirement for preliminary injunction to ensue and explaining that adverse party must be given fair opportunity to oppose application and "to prepare for such opposition" (internal quotation marks omitted)).

I.  **BACKGROUND**

Plaintiff is currently confined at the New Jersey State Prison ("NJSP") in Trenton, New Jersey, and is housed in the Management Control Unit ("MCU"), a "close custody unit." N.J.A.C. 10A:5-1.3, -2.1 *et seq*.  On February 26, 2008, Plaintiff filed a Complaint, asserting claims under 42 U.S.C. § 1983 for alleged violations of his constitutional rights resulting from his confinement at NJSP.  In his Complaint, Plaintiff alleges, in relevant part, that Defendants have discriminated against him and denied him of his constitutional rights by treating him different from other inmates housed in the MCU.  On June 30, 2008, the action was reallocated from the Newark Vicinage to the Trenton Vicinage.

On July 18, 2008, Plaintiff filed a three-paged declaration, seeking the Court to "require [D]efendants to come into compliance with their agency's own mandates."  (Ambrose Harris Declaration July 5, 2008 ("Pl. Decl.") ¶ 4).[2]  Specifically, Plaintiff claims that Defendants: (1) do not provide private rooms to be used by medical professionals to interview inmates as required by N.J.A.C. 10A:5-2.25(c); (2) force Plaintiff to discuss private medical issues with medical staff such that other inmates could hear the discussion; (3) refuse to permit Plaintiff the right to participate in MCU Hearings due to purported security concerns; (4) deny Plaintiff use of the showers, yard, canteen, and visiting privileges provided to other inmates housed in MCU; (5) do not permit Plaintiff to leave his cell; (6) verbally threaten Plaintiff with the prospect of being

---

[2] On that date, Plaintiff also sought additional relief from the Court, challenging the reallocation of the action to the Trenton Vicinage as ordered by the Honorable Garrett E. Brown, Jr., Chief Judge, on June 30, 2008, in addition to an order dated June 23, 2008 granting Defendants an extension of time to file their Answer.  Plaintiff further moved for an entry of default judgment against Defendants Michelle Ricci ("Ricci") and Donald Mee ("Mee").  The Court considers in this Opinion only Plaintiff's request for a preliminary injunction and TRO.

placed in "special cell constructed" only for Plaintiff; (7) punish Plaintiff for a crime of which he was found not-guilty;[3] (8) deny Plaintiff adequate legal access; and (9) place Plaintiff on "non-congregate status" despite the lack of statutory or administrative authority to do so.

Plaintiff requests a preliminary injunction and TRO to cure these alleged wrongs. Essentially, Plaintiff seeks the Court to order Defendants to provide Plaintiff with the same rights and benefits provided to other inmates housed in MCU.  In addition, Plaintiff seeks the Court to prevent Defendants from retaliating against Plaintiff or any other person who provided information in support of Plaintiff's action.

Defendants oppose the motion.  Defendants argue that Plaintiff has not meet the requisite standard for injunctive relief to ensue.  Moreover, Defendants claim that they are entitled to deference in this matter because Plaintiff's relief affects the safety and security of the correctional facility and its inmates.

## II.     DISCUSSION

### A.     Standard of Review

In evaluating a motion for a TRO or a preliminary injunction, a court considers whether: "'(1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest.'" *P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) (quoting *NutraSweet Co. v.*

---

[3] On September 7, 1999, Plaintiff, while housed in the Capital Sentence Unit ("CSU") of NJSP, was in an altercation with another inmate, resulting in that inmate's death. (Complaint, Appendix at 234-38).  The State of New Jersey initiated charges against Plaintiff based on this incident.  However, after a three-week trial in the Criminal Division of the New Jersey Superior Court, a jury found Plaintiff not-guilty of the charges. (Complaint, Appendix).

*Vit-Mar*
*Enter., Inc.*, 176 F.3d 151, 153 (3d Cir.1999)) (applying standard on motion for preliminary injunction); *Ballas v. Tedesco*, 41 F. Supp. 2d 531, 538 (D.N.J. 1999) (applying standard on motion for TRO). Because a preliminary injunction is an extraordinary remedy, "[t]he burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc.*, *supra*, 428 F.3d at 508. Moreover, the plaintiff, carrying the burden, must *clearly* show the four required prongs. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). If disputed issues of fact exist, a court cannot issue a preliminary injunction. *Riley v. Brown*, 2006 WL 1722622, *7 (D.N.J. June 21, 2006).

Furthermore, because Plaintiff's claims are subject to the Prison Litigation Reform Act of 1995 ("PLRA"),[4] the Court must address additional concerns. The PLRA provides that:

> [i]n any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity . . . in tailoring any preliminary relief. . . .

18 U.S.C. § 3626(a)(2).

**B.   Analysis**

Applying the four factors to Plaintiff's request, the Court finds that Plaintiff did not carry his burden to establish that injunctive relief is warranted. Plaintiff's claims implicate various

---

[4] The PLRA serves to "limit the number of prison condition lawsuits . . . and to return control over prison policies and decision-making to local prison officials." *DeHart v. Horn*, 390 F.3d 262, 273 (3d Cir. 2004).

constitutional rights arising under the First, Fifth, Eighth, and Fourteenth Amendments. Plaintiff now seeks an order enjoining Defendants from engaging in the unconstitutional conduct alleged in the Complaint. Initially, the Court recognizes that, at this stage in the litigation—at which Defendants have not yet filed an Answer to Plaintiff's Complaint—it is difficult to ascertain Plaintiff's likelihood of success on the merits of his multiple claims. For that reason, the Court grants Plaintiff all reasonable benefits and assumes for purposes of Plaintiff's request for injunctive relief that there is a reasonable likelihood of success on the merits. However, even with that assumption, the Court finds that the remaining considerations warrant a denial of Plaintiff's request.

First, the Court finds that Plaintiff has not shown that he would be irreparably injured if the Court denied the requested relief. To establish an irreparable harm, Plaintiff must show that he seeks to prevent an injury "that cannot adequately be compensated after the fact by monetary damages." *Berry v. N.J. State Prison*, 2008 WL 2967082, *3 (D.N.J. July 31, 2008) (internal quotation and editing marks omitted). Plaintiff's alleged injuries can be grouped into the following categories: (1) the inability to privately discuss personal medical issues; (2) the inability to participate in MCU Hearings; (3) his segregation, and treatment differing, from other inmates housed in MCU; and (4) the inability to meaningfully access the courts.

The Court finds these alleged injuries, although severe, are not irreparable for purposes of granting injunctive relief. In respect of the inability to privately discuss medical concerns and the different treatment afforded Plaintiff, the Court finds that these alleged injuries are not those

"that cannot adequately be compensated after the fact by monetary damages."[5] *Berry*, *supra*, 2008 WL 2967082 at *3 (internal quotation and editing marks omitted).  As to Plaintiff's claim that he was denied the right to attend two MCU hearings on February 1, 2008 and May 29, 2008, the Court finds that this allegation does not establish that Plaintiff is in "real and immediate" danger of suffering such a harm again.  *See Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) ("The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." (citations and internal quotation marks omitted)); *Pa. Prison Soc'y v. Cortes*, 508 F.3d 156, 167 (3d Cir. 2007) (requiring showing of sufficient likelihood plaintiff would again be wronged in similar manner (quoting *Lyons*, *supra*, 461 U.S. at 111)).  Importantly, "an injunction may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights[.]"  *Barkley v. Ricci*, 2007 WL 4440178, *1 (D.N.J. Dec. 17, 2007) (internal quotation and editing marks omitted).

Finally, in respect of Plaintiff's request that Defendants provide him with meaningful access to the courts, the Court finds that, apart from the bald assertion, Plaintiff has not made any specific allegation as to the manner in which Defendants deprive Plaintiff of such access.  Absent a description of the specific acts sought to be restrained or required, the Court cannot enter an order granting injunctive relief.  *See* Fed. R. Civ. P. 65(d) (requiring "[e]very order granting an injunction and every restraining order [to] . . . describe in reasonable detail—and not by referring

---

[5] The Court notes that Plaintiff's allegations concerning his daily living conditions at NJSP do not incorporate claims that Plaintiff is wholly deprived of life's necessities, which could constitute an irreparable injury.  *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (finding violation of Eighth Amendment may arise where prison officials deny "the minimal civilized measure of life's necessities" (citation and internal quotation marks omitted)).

to the complaint or other document—the act or acts restrained or required").

Second, the Court finds that granting Plaintiff's request could cause irreparable harm to Defendants. Plaintiff's request seeks, in part, the Court to modify Plaintiff's classification within NJSP. Generally, inmates are assigned to MCU based on an inmate's disruptive behavior within a prison facility. N.J.A.C. 10A:5-2.5(a) (requiring assignment of inmate to MCU if inmate "poses a substantial threat: [t]o the safety of others; [o]f damage to or destruction of property; or [o]f interrupting the operation of a State correctional facility"); N.J.A.C. 10A:5-2.4(a) (listing criteria used by prison officials to determine appropriateness of MCU placement). Further, prison officials may restrict privileges granted to inmates housed in MCU for disciplinary reasons. N.J.A.C. 10A:5-2.29(b).

Impinging upon that administrative process, at this preliminary stage of the action, could cause a substantial burden on Defendants. Although injunctions that merely require prison officials to comply with their own polices do not impose on them substantial burdens, *see Riley*, *supra*, 2006 WL 1722622, at *12, Plaintiff's request seeks more than just requiring compliance with policies; it seeks the Court to supplant its own judgment for that of Defendants' as to the manner of executing those policies that aim to ensure security and order at the facility. *See Neumeyer v. Beard*, 421 F.3d 210, 214 (3d Cir. 2005) ("'Within prison walls, a central objective of prison administrators is to safeguard institutional security.'" (quoting *Hunter v. Auger*, 672 F.2d 668, 674 (8th Cir. 1982))). Weighing all the factors present, the Court finds that such an interference is not justified and would cause harm to Defendants. *See Norris v. Frame*, 585 F.2d 1183, 1187 (3d Cir. 1978) ("Because of the difficult task confronting prison officials, federal courts should be reluctant to interfere in matters relating to the internal administration of the

states' correctional facilities.").

Finally, the Court determines that public concerns warrant that the Court deny Plaintiff's request. In this instance, the Court considers two principle interests: (1) the public's interest in the ability of the prison officials to safeguard security and order within a prison facility; and (2) the public's interest in ensuring that constitutional rights are not unduly abridged. *See Monmouth County Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 333 (3d Cir. 1987) (noting that, although "prison walls do not form a barrier separating prison inmates from the protections of the Constitution[,] . . . some limitation on very significant rights is justified in the prison context both from the fact of incarceration and from valid penological objectives-including . . . institutional security." (internal quotation and editing marks omitted)). The Court recognizes that, in addition to balancing those interests, the PLRA requires the Court to grant "substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by" Plaintiff's request. 18 U.S.C. § 3626(a)(2). Ultimately, considering the implicated concerns and according due weight, the Court determines that public interest weighs in favor of denying Plaintiff's request. Therefore, the Court concludes that injunctive relief would be inappropriate.

### III.    CONCLUSION

For those reasons, the Court denies Plaintiff's request for a preliminary injunction and TRO. An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: August 14, 2008